## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| ELLIOT PLAZA PHARMACY, LLC,<br>individually and on behalf of others similarly<br>situated, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 06-CV-623-GKF-TLW |
| | ) | |
| AETNA U.S. HEALTHCARE, INC.; AETNA<br>HEALTH MANAGEMENT, INC.; AETNA<br>HEALTH MANAGEMENT, LLC; and AETNA,<br>INC., | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter comes before the court on the Motion to Dismiss [Dkt. # 27] filed by defendants

Aetna U.S. Healthcare, Inc., Aetna Health Management, Inc., Aetna Health Management, LLC, and

Aetna, Inc. [collectively, "Aetna"].

The court will "assume the truth of the plaintiff's well-pleaded factual allegations and view

them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d

1174, 1177 (10th Cir. 2007) (citing *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005)). In

making this determination, the Court considers "whether the complaint contains 'enough facts to

state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 127 S.Ct. 1955, 1969, 1974 (2007)). "[A] plaintiff must 'nudge [his] claims across the line

from conceivable to plausible' in order to survive a motion to dismiss." *Id.* (quoting *Twombly*, 550

U.S. 544, 127 S.Ct. at 1974). This means "the mere metaphysical possibility that *some* plaintiff

could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must

give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Id.*

Plaintiff Elliot Plaza Pharmacy, LLC ("Elliot Plaza") operates a retail pharmacy. Aetna administers pharmacy benefit plans for employers who provide prescription drug coverage to employees and their dependants. Aetna contracts with pharmacies to reimburse them for pharmaceuticals dispensed under Aetna-administered pharmacy benefit plans. On January 23, 1996, Aetna entered into such a contract with Pharmacy Providers of Oklahoma ("PPOK"). That contract specified how Aetna was to reimburse pharmacies who are members of PPOK. Elliot Plaza is a PPOK member whose relationship with Aetna is governed by the contract.

Elliot Plaza brings the following claims against Aetna:

1) Violations of Oklahoma's Third Party Prescription Act ("OTPPA"). Elliot Plaza claims Aetna is obligated to reimburse Elliot Plaza based on a prescription drug's Average Wholesale Price ("AWP") as updated on a daily as opposed to a weekly basis. The contract provides that "'Average Wholesale Price' means the current average wholesale price of a prescription drug listed in the First Databank *weekly* price updates on the day that Pharmacy submits a claim for adjudication." [Dkt. # 27, p. 32, ¶1.02 (emphasis added)]. Elliot Plaza alleges the reimbursement rates paid under the contract are "less than the prevailing rates paid by ordinary consumers for the same or similar pharmaceutical goods or services," and that Aetna's actions and contracts violate the OTPPA. [Complaint, Dkt. # 2, ¶¶ 22, 37].

2) Breach of Contract. Elliot Plaza claims that Aetna's practice of failing to reimburse based upon daily AWP updates constitutes a breach of contract.

3) Misrepresentation/Suppression. Among other things, Elliot Plaza alleges that Aetna misrepresented that it would fully and properly reimburse for prescriptions filled under the contract.

4) Unjust Enrichment/Constructive Trust. Elliot Plaza claims that Aetna has been unjustly enriched by obtaining money through its allegedly fraudulent actions and misrepresentations. Elliot Plaza requests the court impose a constructive trust on such monies.

5) Unfair Business Practices. Elliot Plaza alleges that Aetna operates a mail-order pharmacy service that competes in the market and is not burdened with the same contractual restrictions imposed upon Elliot Plaza.

6) Injunctive Relief. Elliot Plaza seeks injunctive relief requiring Aetna to cease all actions conducted in violation of the OTPPA. Elliot Plaza also seeks injunctive relief requiring Aetna to reimburse Elliot Plaza using "real time" AWP.

The court addresses each of the claims in turn.

## I.      Oklahoma's Third Party Prescription Act

On its face, the OTPPA does not create a private right of action.  The court must therefore determine whether a private right of action may be inferred.  The Oklahoma Supreme Court has adopted a three-factor test for determining whether a private right of action may be inferred from a regulatory state statute.  Under this test, a private right of action can be inferred only if:

(1) the plaintiff is one of the class for whose *especial* benefit the statute was enacted;

(2) some indication of legislative intent, explicit or implicit, suggests that [the legislature] wanted to create a private remedy and not to deny one; [and]

(3) implying a remedy for the plaintiff would be consistent with the underlying purposes of the legislative scheme.

3

*Holbert v. Echeverria*, 744 P.2d 960, 963 (Okla. 1987) (citing *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088 (1975)).  The central inquiry is whether the legislature intended, either expressly or by implication, to create a private cause of action.  *Touche Ross & Co. v. Reddington*, 442 U.S. 560, 575-76, 99 S.Ct. 2479, 2489 (1979); *Schmeling v. Nordam*, 97 F.3d 1336, 1344 (10th Cir. 1996). The other *Cort* factors are relevant to the extent they assist the court in determining legislative intent. *Schmeling*, 97 F.3d at 1344.

As to the first factor, the OTPPA is a regulatory statute designed to protect consumers, the public, and pharmacies. *See* Okla. Stat. tit. 15, § 782.  Inasmuch as the Act is created for various classes of beneficiaries, there is no particular class for whose "especial" benefit it was enacted. *Holbert*, 744 P.2d at 963.  The Act regulates the actions and contracts of third party prescription administrators.  *See* Okla. Stat. tit. 15, §§ 785-788.  "Statutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Alexander v. Sandoval*, 532 U.S. 275, 289, 121 S.Ct. 1511, 1521 (2001) (quoting *California v. Sierra Club*, 451 U.S. 287, 294, 101 S.Ct. 1775 (1981)).  The argument that a private right of action is implied in the Act does not pass muster under the first *Cort* factor.

As to the second factor, there appears to be no indication, either explicit or implicit, that the Oklahoma legislature wanted to create a private remedy.  The legislature expressly entrusted administration and enforcement of the OTPPA to the Oklahoma Insurance Department.  Okla. Stat. tit. 15, § 789.  "Where a statute provides an administrative enforcement mechanism, the presumption is that no private cause of action is intended."  *L'ggrke v. Benkula*, 966 F.2d 1346, 1348 (10th Cir. 1992).  Elliot Plaza has not satisfied this court that the presumption ought not apply herein.

4

Elliot Plaza argues that Section 785(B)(3) of the Act indicates legislative intent to create a private cause of action. Section 785(B)(3) requires that contracts between third party administators and pharmacies must include a statement of "[t]he method for the adjudication of complaints or the settlement of dispute between the parties."[1] Elliot Plaza suggests that the provision "provides a clear indication that the Legislature intended for the parties to resolve disputes in Court" and by doing so the "Legislature provided all pharmacies the ability to seek remedies for violations of the OTPPA." The court declines to accept plaintiffs' interpretation of the statute. To the contrary, Section 785(B)(3) merely requires a third party prescription contract to contain a provision as to how disputes between the parties are to be addressed. It does not suggest the creation of a private cause of action for violations of OTPPA.

Finally, this court does not find a private remedy consistent with the general scheme of the OTPPA. The purpose of the Act is to prevent certain practices engaged in by some third party prescription program administrators. To accomplish this, the legislature gave the Insurance Commissioner the power to administer and enforce the provisions of the Act and to promulgate rules and regulations as may be necessary to carry out the Act's provisions. *See Walker v. Chouteau Lime Co.*, 849 P.2d 1085, 1087 (Okla. 1993) (finding a private remedy inconsistent with the scheme of the Unfair Claim Settlement Practices Act, where the Oklahoma legislature gave the Insurance Commissioner the power to regulate and revoke or suspend licenses).

This court holds that the OTPPA does not provide a private cause of action. Count I must be dismissed.

---

[1]Paragraph 9.06 of the contract requires non-binding mediation.

## II.  Breach of Contract

The plain terms of the contract provide that the Average Wholesale Price is the current average wholesale price of a prescription drug listed in the *weekly* price updates on the day that a pharmacy submits its claim for adjudication.[2]  Plaintiff's allegations of breach of contract are directly and dispositively contradicted by the terms of the contract.

Elliot Plaza argues that dismissal of its claim for breach of contract would be improper because the contract specifically incorporates all federal, state and local laws and regulations, so a violation of the OTPPA constitutes a breach of contract.  Although existing law is a part of every contract, incorporation of the OTPPA into the contract cannot somehow create a private right of action that does not exist in the unincorporated statute.  *See Council Oaks Learning Campus, Inc. v. Farmington Cas. Co.*, 2000 WL 376623 (10th Cir. 2000) (unpublished) (rejecting argument that incorporating the Unfair Claims Settlement Practices Act into the insurance contract somehow creates a private right of action that does not exist in the statute).  Elliot Plaza's claim for breach of contract must be dismissed.

## III.  Fraud:  Misrepresentation/Suppression

Rule 9(b) states that "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  "At a minimum, Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud." *U.S. ex rel. Sikkenga v. Regence BlueCross BlueShield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006)

---

[2] In ruling on defendants' Motion to Dismiss, the court has considered the terms of the contract appended as Exhibit 1 to the motion.  The court need not convert the motion into one for summary judgment because the contract attached by defendants is "referred to by the plaintiff and central to [its] claim." *Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999); *Chalfant v. Tubb*, 453 F.Supp.2d 1308, 1313 (N.D. Okla. 2006).

(quotations and citations omitted).  In Count III of the Complaint, Elliot Plaza alleges that Aetna fraudulently misrepresented and/or suppressed "the true nature of their pharmacy benefit reimbursement program as outlined in the parties' contracts."  This conclusory allegation is unsupported by any pleaded facts concerning the time or place of the false representations, the identity of the person making the false statements, or to whom the statements were made.  This court concludes that the conclusory allegations contained in Elliot Plaza's complaint fall short of adequately pleading fraud.

Moreover, the plain language of the Contract states that the AWP is "the current average wholesale price of a prescription drug listed in the First DataBank *weekly* price updates on the day that pharmacy submits a claim for adjudication."   (Contract ¶ 1.02 (emphasis added)). The Complaint contains no specific allegation of an affirmative misrepresentation that induced plaintiff to accept the terms of the Contract, and Paragraph 10.08 of the Contract expressly forecloses any such claim ("This Agreement and its Exhibits constitute the entire understanding among the parties with respect to the subject matter hereof and supersede all prior or contemporaneous agreements, representations and understandings").  Nor is there any suggestion of a fiduciary relationship or other peculiar circumstance that might give rise to a duty on Aetna's part to explain to Elliot Plaza that the contractual term "weekly price updates" does not mean daily price updates.

## IV.   Unjust Enrichment/Constructive Trust

In Count IV of the Complaint, Elliot Plaza claims the defendants were unjustly enriched as a result of their misrepresentations and wrongful conduct and requests the Court impose a constructive trust on monies defendants have received. Unjust enrichment is a condition which results from the failure of a party to make restitution in circumstances where it is inequitable; i.e.

the party has money in its hands that, in equity and good conscience, it should not be allowed to retain. *Harvell v. Goodyear Tire and Rubber Co.*, 164 P.3d 1028, 1035 (Okla. 2007). The primary reason for imposing a constructive trust is to avoid unjust enrichment. It is imposed against one who "by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy." *Cacy v. Cacy*, 619 P.2d 200, (Okla. 1980). Insofar as this Court has determined that plaintiff's claims for breach of contract and fraud must be dismissed, plaintiff's alternative claim for unjust enrichment must also be dismissed. *Pearson's Pharmacy, Inc. v. Express Scripts, Inc.*, 505 F.Supp.2d 1272, 1278 (M.D. Ala. 2007).

**V.      Unfair Business Practices**

In response to the Motion to Dismiss, Elliot Plaza identifies the Oklahoma Deceptive Trade Practices Act ("ODTPA"), Okla. Stat. tit. 78, § 51, *et seq.*, as the legal basis of its unfair business practices claim. It fails, however, to identify a single ODTPA provision allegedly violated. Aetna's alleged conduct does not fall within the scope of acts constituting deceptive trade practices. *See* Okla. Stat. tit. 78, § 53. Accordingly, the claim of unfair business practices must be dismissed.

**VI.      Injunctive Relief**

In Count VI of the Complaint, Elliot Plaza seeks to enjoin defendants from actions alleged to be in violation of the OTPPA and to require defendants to "fully, properly and timely" reimburse plaintiff for payments using "real time" Average Wholesale Price. Such injunctive relief is dependent upon the plaintiff's underlying claims. It is inappropriate where, as here, the plaintiff has

8

failed to state a viable underlying claim for relief.

**VII.    ERISA Preemption**

Finally, defendants argue the case must be dismissed because ERISA preempts the claims. [*See* Dkt. # 27, p. 8].  The Tenth Circuit has noted that "any court forced to enter the ERISA preemption thicket sets out on a treacherous path." *David P. Coldesina, D.D.S. v. Estate of Simper*, 407 F.3d 1126, 1135 (10th Cir. 2005) (quotations and citations omitted).  It is unnecessary to enter the thicket, as the motion must be granted on other grounds.

**Conclusion**

Having reviewed the Complaint, the Motion to Dismiss and associated briefs, the court concludes that the motion should be granted, as the plaintiff has "failed to 'nudge[] [its] claims across the line from conceivable to plausible.'" *Red Hawk*, 493 F.3d at 1178 (quoting *Twombly,* 550 U.S. 544, 127 S.Ct. at 1974).

WHEREFORE, defendants' Motion to Dismiss [Dkt. # 27] is granted.

IT IS SO ORDERED this 16th day of March, 2009.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma